Charles E. Friend v. Commissioner.
Friend v. Commissioner
Docket No. 28559.
United States Tax Court
1951 Tax Ct. Memo LEXIS 33; 10 T.C.M. (CCH) 1119; T.C.M. (RIA) 51347; November 29, 1951
*33 Petitioner purchased a block of partially improved real property, made improvements such as grading and subdividing into lots, and then sold the lots. Held, income to the petitioner from the sale of the lots was ordinary income. Charles E. Friend, Esq., pro se. William B. Springer, Esq., for the respondent. JOHNSON
Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency in petitioner's income tax liability for the calendar year 1947 in the amount of $2,827.73. In computing the deficiency respondent reduced the medical deduction, disallowing $344.27 because of petitioner's increase in adjusted gross income. Petitioner in an amended petition asserts an overpayment of $139.64 in the payment of his 1947 income tax. The only issue is whether a gain realized on the sale *34 of real estate in the taxable year is taxable as ordinary income or as capital gain. The case is submitted upon the pleadings, oral and written evidence. Findings of Fact Petitioner is an individual, age 64, living in Denver, Colorado. His individual income tax return for the calendar year 1947 was filed with the collector of internal revenue for the district of Colorado. Petitioner was admitted to practice law in Colorado in 1914 and before the United States Board of Tax Appeals in 1940. Since 1933 petitioner's law practice has consisted primarily of estate, office practice, and noncontested matters. In 1947 his income from his law practice was approximately 21 per cent of his total income. In his law practice petitioner has frequently assisted in the sales of real estate for his clients. Much of his law work concerning real estate was connected with his probate practice. In 1946 petitioner took out a real estate broker's license and has renewed it for each subsequent year. In 1946 and 1947 petitioner was listed in the classified section of the Denver telephone directory under "Real Estate". In March, 1946, petitioner started probate of the Henry Shannon estate, and Mrs. *35 Shannon appointed the petitioner to sell part of the estate property. In conjunction with the disposition of this property petitioner had printed 500 letterheads with his name, address, telephone numbers, and the words "Attorney at Law", "Real Estate", and "Insurance" thereon. Some of the Shannon estate property was in Block 16, East Berkeley, Denver, Colorado, which is the first block south of Block 17; both blocks are bounded on the west by Federal Boulevard. Both of these blocks were zoned to residences. Petitioner concluded that he could not sell the Shannon property in Block 16 unless he had it rezoned to business. In April of 1946 petitioner initiated proceedings to have this property rezoned for business use and later it was so rezoned. The approval signatures of all parties within 500 feet of Block 16 had to be obtained prior to rezoning the property. While soliciting the signatures of the owners of Block 17, petitioner discovered that he could purchase this block from the owners, Jeanne Veyret Barbottin and Louis Veyret, who were living in France. Petitioner started negotiations to buy this property in June of 1946. He made a down payment of $5,000 on the property, and *36 on August 2 paid an additional $2,000. Petitioner's original negotiations were with the sellers' representative in St. Louis; however, on December 6, 1946, petitioner made another contract with a Mr. Richards in Denver, also representing the sellers in this sale. The total price of the property was $14,000, and sometime in December, 1946, petitioner paid the balance of this price. On or about December 9, 1946, petitioner received a deed which he rejected because of a defective signature. At some later date, prior to March, 1947, petitioner received the final corrected deed. At the time of purchase Block 17 was partially improved. It was bounded by paved streets on all four sides. In 1941 electricity had been installed across Block 17, and in 1945 a sewer had been laid through the block. Petitioner, at his own expense, further improved the land by installing a water main and then proceeded to have the land leveled and graded. Petitioner subsequently laid out, platted and resubdivided Block 17 into 24 lots; each lot measured 50 feet by 125 feet. Petitioner also dedicated an alley right-of-way to the City and County of Denver. He named the subdivision "Friend's Resubdivision of Block *37 17 East Berkeley". In June, 1946, petitioner started proceedings to have the Federal Boulevard side of Block 17 rezoned to business use. The Council of the City and County of Denver on September 8, 1947, approved this rezoning and the bill was signed by the mayor. The expenditures made by petitioner in acquiring Block 17, including settlement charges and the City of Denver redemption taxes, and the improvement expenditures, including the grading, leveling and water main, exceeded $4,000. In 18 separate sales during the year 1947, petitioner sold 21 of the 24 lots in Block 17. The first sale was made in April and the last in November. The net profit from the sale of these lots amounted to $16,047.39. This sum includes the profit realized on three lots which were repurchased by the petitioner and then resold to a second buyer. Petitioner attributed one-third of his 1947 office expenses to the cost of selling this property, and deducted this amount in arriving at the net profit on the sale of lots in Block 17. Petitioner listed the property with real estate brokers, and utilized the services of other salesmen in selling some of these lots. He paid sales commissions in the amount *38 of $1,464.80. To further implement the sales of these lots, petitioner advertised in the Denver newspapers and placed "For Sale" signs on the property. Petitioner never received rent money for the lease of any of these lots, nor did he construct any building for rental purposes. However, early in 1947, petitioner made some effort to lease part of this property to oil companies but was unsuccessful in obtaining any lease agreements. On his 1946 individual income tax return, under "Occupation", petitioner indicated "Lawyer & Real Estate"; on his 1947 individual income tax return, under "Occupation", petitioner stated "Lawyer - Real Estate Broker", and on page 2 of this return, under Schedule C, petitioner noted his business profession to be "Lawyer & Real Estate". The property, Block 17, was held by petitioner primarily for sale to customers in the ordinary course of his trade or business. In computing his 1947 income tax, petitioner listed medical expenses in the amount of $1,921.41 and claimed a deduction of $1,078.13 as representing the excess of $1,921.41 over 5 per cent of the adjusted gross income reported by him. Respondent disallowed $344.27 of the deduction claimed solely *39 because he increased adjusted gross income. Opinion The only issue to be decided is whether the net income of petitioner derived from the sale of real property in the taxable year ended December 31, 1947, was taxable as ordinary gain, as determined by the respondent, or as capital gain, as claimed by the petitioner. Petitioner in his brief argues that the evidence proves that he did not sell his property to customers in the ordinary course of trade or business but sold it as an investment. He argues that his property was a "capital asset" and that he is entitled to the benefit of a capital gain under section 117, Internal Revenue Code, on the net proceeds of the sales. In support of this contention he alleges that he originally purchased the property primarily for the purpose of leasing rather than selling; and that because of increased building costs subsequent to his purchase, it was economically unfeasible for him to profitably lease the property. In his own words, "Petitioner, in panic, decided he had to sell at once", and the manner in which he successfully sold the property proves that he was in the business of selling real estate. We are not primarily *40 concerned with what may have been petitioner's original intention to lease the property, and we shall not discuss it. The intention at the time of purchase does not control the intention at the time of sale. We can not subscribe to petitioner's contention that he held his property as an investment. In determining whether property is held primarily for sale in a trade or business, the manner in which it was acquired, or the fact that it was not originally acquired for resale or subdivision into lots, is of little importance. King v. Commissioner, 189 Fed. (2d) 122; White v. Commissioner, 172 Fed. (2d) 629. The sole question is, was the taxpayer in the lot selling business when the sales were made? The determination of the question of whether property is held for sale in the usual course of trade or business is essentially a question of fact. King v. Commissioner, supra.The Tax Court has a primary function of finding the facts in tax disputes, of weighing the evidence and choosing from among conflicting factual inferences and conclusions those which it considers most reasonable. Commissioner v. Scottish American Inv. Co., Ltd., 323 U.S. 119. *41 There is no one decisive test to determine whether real estate was sold in the usual course of business. The solution depends upon an examination of all the facts. The number of lots sold, the consideration received, and the profits realized reveal that petitioner's sales were not casual; rather they indicate a frequency, continuity, and a volume characteristic of one engaged in the real estate business. The fact that petitioner was an attorney and engaged in active practice does not in itself preclude petitioner from engaging in the real estate business. Another circumstance which indicates that petitioner was engaged in the real estate business is that he paid the State of Colorado for a real estate broker's license and kept the license in force prior to and during the year in question. Further indication of his business is that petitioner held himself out as a real estate broker in the classified section of the telephone directory, letterheads, and newspaper advertising. The fact that he utilized the services of other salesmen is also indicative of his activity in the real estate business. But perhaps the highest and best evidence that petitioner was engaged in the real estate *42 business in 1947 is the statement made by petitioner himself to that effect. In petitioner's income tax returns for 1946 and 1947 he stated that his occupation was "Lawyer - Real Estate Broker". Surely petitioner, with a legal education, knew the business in which he was engaged. In our opinion, even if we were to hold the property to be a capital asset, there is a question whether petitioner held the property for the six-months' period so as to benefit from section 117, I.R.C.
A review of the evidence precludes the possibility that petitioner was merely liquidating an investment. By his own admission he could have sold Block 17 at a substantial profit shortly after he acquired it. Certainly, if liquidation of an investment is the purpose of the sale, a quick and facile sale of the entire block would be preferred to piecemeal sales of individual lots over a period of months. From a consideration of all the evidence, we conclude that the property in question was held by petitioner primarily for sale to customers in the ordinary course of his trade or business and that gains therefrom are ordinary and not capital gains. The question as to the disallowance *43 of the medical expenses is purely a mathematical problem. With an increase in adjusted gross income the amount of 5 per cent of the adjusted gross income is likewise increased, and the allowable medical deductions decreased. Petitioner's claim of an overpayment in his 1947 income tax in the amount of $139.64 was first and last asserted in his amended petition. In making the calculations indicating the overpayment, petitioner considered 50 per cent of the net income of Block 17 to be taxable income and also claimed deductions which did not correspond to his deductions as claimed on his 1947 return. We find that the petitioner has improperly made this claim for overpayment. The question as to the taxable income on the property is considered in the opinion above. As no other mention was made of the deductions, the petitioner has, necessarily, failed in his burden of proof as to these deductions. Decision will be entered for the respondent.